## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SONIA SMITH**,<br><br>Plaintiff,<br><br>v.<br><br>**GORDON HARTOGENSIS**, *in his official capacity as Director of Pension Benefit Guaranty Corporation*,<br><br>Defendant. | Case No. 1:19-cv-03628 (TNM) |

## <u>MEMORANDUM OPINION</u>

Sonia Smith sought four management positions within the Pension Benefit Guaranty Corporation ("Corporation"). She fell short every time. Each time, the Corporation chose a candidate whom it believed had a stronger interview, more experience, or both. Smith calls foul. She asserts that she was the better candidate each time and that the Corporation did not choose her because of her sex, color, and race, and because she engaged in a protected activity. She sues Corporation Director Gordon Hartogensis under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967 ("ADEA"). The Director moves for summary judgment on Smith's claims.

Smith may genuinely believe that she was the best candidate. She cannot, however, overcome the Director's legitimate reasons for not hiring her. Courts do not interfere with employers' decisions, right or wrong, absent evidence of pretext or a discriminatory or retaliatory motive. That evidence is missing here. The Court will grant the Director's summary judgment motion.

## I.

Smith is a 58-year-old African American woman who formerly worked as an IT project manager in the Corporation's Participant Management Services Division ("PMSD").  Def.'s Statement of Undisputed Material Facts ("Def.'s SUMF") ¶¶ 1–3, ECF No. 11.  The PMSD is a division within the Business Innovation Services Department ("BISD") for the Office of Information Technology ("OIT").  *Id.* ¶ 4.  The Corporate Management Services Division ("CMSD") is another BISD division.  *Id.*

Srividhya Shyamsunder—an Indian American over the age of 40—serves as the BISD director.  *Id.* ¶ 5.  Lisa Glufling was the PMSD manager and Smith's supervisor.  *Id.* ¶ 7.  When Glufling left, Shyamsunder selected Smith as acting PMSD manager on Glufling's recommendation.  *Id.* ¶ 8.

The Corporation then posted a vacancy announcement for the permanent PMSD manager job.  *Id.* ¶ 9.  Smith applied, and Human Resources identified her, Badar Awan (mid-40's, Asian male), and Sathish Adikesavan (mid-40's, Asian male) as the best qualified candidates.  *Id.* ¶¶ 10–11.  Shyamsunder was the selecting official, and she convened a panel to interview the candidates.  *Id.* ¶ 13.  The panel included Shyamsunder, John Larsen (white male, over the age of 40), and Marilyn Collins (black female, over the age of 40).  *Id.* ¶ 12.  The panelists asked the candidates identical questions and scored them on a scale of 1–10.  *Id.* ¶ 14.  Smith received a cumulative score of 24.5.  Def.'s Mot. Summ. J. ("Def.'s Mot.") Ex. 1, Report of Investigation ("ROI") at 46, 48, 51 (Part 2), ECF No. 11-3.[1]  Adikesavan received a cumulative score of 28

---

[1]  The Director divides the Report of Investigation into three parts in the record.  All page citations refer to the pagination generated by the Court's CM/ECF system, except deposition transcripts.  Page citations for deposition transcripts refer to the pagination of the transcript.

and was ultimately hired as PMSD manager.  *See* ROI at 60 (Part 1), ECF No. 11-2; ROI at 28, 30, 32 (Part 2).

Undeterred, Smith later applied to be CMSD manager.  Def.'s SUMF ¶ 35.  Shyamsunder was the selecting official again, and she convened another interview panel that included her and Collins, as well as Mike Rucki (white male, over the age of 40).  *Id.* ¶¶ 36–37.  Smith, Awan, and Vera McKee (black female) interviewed for the job.  *Id.* ¶ 35.  The panel asked each candidate the same questions and rated them on a scale of 1–5 in three subject areas:  knowledge, skills, and abilities ("KSAs"); specialized experience; and competencies.  *Id.* ¶ 38.  A candidate had to score at least a "3" in each subject area from every panelist.  *Id.*  But no panelist awarded Smith a "3" in more than one subject area.  *Id.* ¶¶ 39, 41, 43.  Only Awan met the minimum score requirement, but Shyamsunder did not hire him because "he did not demonstrate that he would be successful in a managerial capacity."  *Id.* ¶¶ 45–46, 50.  So the position remained vacant.  *Id.* ¶ 50.

Meanwhile, Shyamsunder selected Soraya "Nicole" Queen—a 47-year-old African American female—as acting CMSD manager.  *Id.* ¶¶ 51, 55.  Queen was the only employee to approach Shyamsunder about the acting manager position.  Def.'s Mot. Ex. 5, Dep. of Srividhya Shyamsunder ("Shyamsunder Dep. Tr.") 78:4–5, ECF No. 11-5; ROI at 92 (Part 1).  Shyamsunder chose Queen after reviewing her resume and finding her to be qualified.  ROI at 92 (Part 1); Def.'s SUMF ¶ 55.

The Corporation then posted another vacancy announcement for CMSD manager.  Def.'s SUMF ¶ 56.  Smith reapplied and landed in the "Best Qualified" category along with Awan and others.  *Id.* ¶¶ 57, 59.  But Smith and Awan were not interviewed because they had interviewed for the first CMSD manager vacancy.  *See* Shyamsunder Dep. Tr. 82–83.  Shyamsunder

interviewed the new candidates without a panel.  Def.'s SUMF ¶ 62.  She asked them the same questions that the panel asked during the first CMSD manager interviews and she also used the same three subject areas and rating scale to evaluate the candidates.  *Id.*  Queen received the highest score and earned the CMSD manager role.  *Id.* ¶ 63; ROI at 99 (Part 1).

Smith filed a formal Equal Employment Opportunity complaint alleging discrimination after she did not receive the PMSD manager job.  *See* ROI at 3–4 (Part 1).  She then filed another EEO complaint alleging discrimination and retaliation after she was not selected as CMSD manager or acting CMSD manager.  *Id.* at 5–6.  She amended her EEO complaint four times.  *Id.* at 17–18.  An administrative law judge ruled for the Director on Smith's claims.  *See* Def.'s Mot. Ex. 7, ECF No. 11-5.

Smith now sues the Director here.  She challenges the decision not to hire her for the PMSD manager and acting and permanent CMSD manager positions.  Smith claims that her non-selections constitute impermissible sex, race, and color discrimination and retaliation under Title VII, *see* Compl. ¶¶ 28–39, ECF No. 1, and age discrimination under ADEA, *id.* ¶¶ 40–45.

The Director moves for summary judgment.  The motion is ripe for disposition.[2]

## II.

At summary judgment, the movant must establish that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact is one that changes the

---

[2]  The Court has subject matter jurisdiction under 28 U.S.C. § 1331, 29 U.S.C. § 633a(c), and 42 U.S.C. § 2000e–5(f)(3).

outcome of the litigation. *Anderson*, 477 U.S. at 248.  The Court views the evidence in the light most favorable to the non-moving party. *Johnson v. Perez*, 823 F.3d 701, 705 (D.C. Cir. 2016).

"Where, as here, a claim of discrimination or retaliation is based upon circumstantial evidence, [courts] analyze the claim under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)." *Kersey v. Wash. Metro. Transit Auth.*, 586 F.3d 13, 16 (D.C. Cir. 2009).  Under this framework, the plaintiff must establish a prima facie case of discrimination or retaliation. *Id.* at 16–17.  "If the plaintiff clears that hurdle, the burden shifts to the employer to identify the legitimate, non-discriminatory or non-retaliatory reason on which it relied in taking the complained-of action." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015).  The burden is one of production; the employer "need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Comty. Affs. v. Burdine*, 450 U.S. 248, 254–55 (1981).

Once the employer offers such a reason, the "court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).  The "central question" is whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory or non-retaliatory reason was not the actual reason and that the employer intentionally discriminated or retaliated against the employee." *Walker*, 798 F.3d at 1092 (cleaned up).  The plaintiff can rely on any combination of (1) evidence establishing the prima facie case; (2) evidence used to attack the employer's proffered reason; and (3) "any further evidence of discrimination that may be available to the plaintiff." *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006).

### III.

Smith challenges the Corporation's decision not to select her for:  (A) PMSD manager; (B) the first CMSD manager vacancy; (C) acting and (D) permanent CMSD manager.  She claims that her non-selections stemmed from discrimination and retaliation.  The Court addresses each position in turn.

### A.

Smith first asserts that the Corporation discriminated against her by selecting Satish Adikesavan—an Asian male in his mid-40's, Def.'s SUMF ¶ 11—over her for PMSD manager, *see* Compl. ¶¶ 15–18, 32.[3]

### 1.

The Director responds that Shyamsunder chose Adikesavan because "she determined that he was the best candidate based on interview performance, input from the interview panel, and application materials."[4]  Def.'s Mot. at 14; *see also* ROI at 50 (Part 1) (the interview panel's "consensus recommendation was to hire Sathish Adikesavan").  The Director provides three reasons to support this hiring decision.

*First*, Adikesavan performed better in the interview.  The "interview panel asked the candidates the same set of questions and rated each candidate on a scale of 1 to 10."  Def.'s SUMF ¶ 14.  Every panelist gave Adikesavan a higher score than Smith.  Adikesavan received a

---

[3]  Smith does not appear to argue that her non-selection was because of retaliation.  This makes sense.  Smith did not file her EEO complaint until *after* she was denied the PMSD manager job.  ROI at 3–4 (Part 1).  And she identifies no other protective activities that she engaged in before applying to be PMSD manager.  So Smith cannot establish a prima facie retaliation claim.  *See Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009) (requiring plaintiff to show that "he engaged in statutorily protected activity" to establish prima facie retaliation claim).

[4]  The Director assumes that Smith "can establish a *prima facie* case regarding her non-selection for the PMSD Manager position."  Def.'s Mot. at 14.

cumulative score of 28:  9.5 from Larsen, 9.5 from Collins, and 9 from Shyamsunder.  *See* ROI at 28, 30, 32 (Part 2).  Smith only received a cumulative score of 24.5:  8.5 from Larsen, 8 from Collins, and 8 from Shyamsunder.  *See id.* at 46, 48, 51 (Part 2).

Adikesavan "answered the interview questions very well" and "revealed in-depth knowledge and understanding of work required by this position."  *Id.* at 80 (Part 1); *see also id.* at 51 (Part 1) (stating that Adikesavan "knew and understood the IT Program Plan and the Participant Management program and was well versed in all of their technology needs"); *id.* at 60–61 (Part 1) ("Mr. Satish Adikesavan demonstrated verbally that he had a comprehensive understanding of the OBA IT solutions, agency IT priorities, and the linkage between program.").  Smith, by contrast, "did not show that she had knowledge required for this position during the interview."  *Id.* at 80 (Part 1).  She "had a difficult time explaining the parts of the IT Program Plan," which is "the key document" and "roadmap that [the] business unit and division manager [would] implement over the next several years."  *Id.* at 51 (Part 1).  Smith also "did not know the budget for the Participant Management IT program even though she had been acting manager for a number of months."  *Id.* (Part 1); *see also id.* at 61 (Part 1) (stating that Smith "could have done a better job explaining her knowledge of the current state of the information technology environment that she would be supporting if selected for the position").

*Second*, Adikesavan "had significantly more management and IT experience," which included 21 years of experience in the private sector as an IT project manager.  *See* Def.'s Mot. at 14.  Larsen noted, for example, that Adikesavan "had many more years of IT management experience at other organizations" and "had a broader and more diverse technology background."  ROI at 51 (Part 1); *see also id.* at 80 (Part 1) ("[Adikesavan] already possessed

great qualifications according to his resume."); *id.* at 23–27 (Part 2) (listing Adikesavan's professional experience).

And *third*, Smith's application materials were riddled with errors.  Def.'s Mot. at 15. Shyamsunder—the selecting official, Def.'s SUMF ¶ 13—highlighted "notable spelling mistakes on [Smith's] application package," which were "reflective of her attention to detail," *see* ROI at 80 (Part 1).  In her 11-page application, there were at least 25 mistakes.  Def.'s Mot. at 17.  They include:

- Misspelling "PBGC" (her agency) as "PB*CG*," *see* ROI at 80 (Part 1), 39 (Part 2);

- Misspelling "ScrumMaster" as "Sc*ur*mMaster, *see id.* at 80 (Part 1), 35 (Part 2);

- Misnaming Office of Benefits Administration (where she worked) twice:  once as Office of *Business* Administration and once as Office of Benefit Administration, *see id.* at 30, 39 (Part 2);

- Misspelling "performed" as "p*re*formed," *see id.* at 43 (Part 2); and

- Misspelling "participant" as "participates," *see id.*

Smith admits that she made these and other mistakes.  *See* Pl.'s Mem. of P. & A. in Opp'n to Def.'s Summ. J. ("Pl.'s Opp'n") Ex. B, Pl.'s Disc. Resps. at 38, ECF No. 13-3.  She downplays them, though, as "small spelling errors" that "do not reflect any lack of attention to detail."  Pl.'s Statement of Disputed Material Facts ("Pl.'s SDMF") ¶¶ 25, 28, ECF No. 13-1.

Even if the Court agreed with her, which it does not, "the key question in this context is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers."  *Hairston v. Vance-Cooks*, 773 F.3d 266, 273 (D.C. Cir. 2014) (cleaned up).  The Corporation listed "Attention to Detail" as a criterion to evaluate candidates. ROI at 64 (Part 2).  Smith acknowledges as much.  *See* Def.'s Mot. Ex. 2, Mar. 26, 2019 Dep. of

Sonia Smith 57:5–14, ECF No. 11-5 (recognizing that attention to detail is an appropriate consideration for the PMSD manager job because "it's on the announcement").  The Corporation's decision to consider Smith's spelling mistakes in assessing her candidacy is not for Smith or this Court to second guess.  *See Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1114 (D.C. Cir. 2016) ("This Court does not sit as a super-personnel department that reexamines an employer's business decisions[.]" (cleaned up)).

The Director has produced legitimate, nondiscriminatory reasons for not selecting Smith as PMSD manager.  *See Holcomb*, 433 F.3d at 896 (holding that a "qualifications-based justification" satisfies the second prong of the *McDonnell Douglas* framework).

**2.**

The burden shifts to Smith.  She must offer evidence from which a reasonable jury could conclude that her non-selection was made for a discriminatory reason.  She raises three grounds to challenge the Director's proffered reasons for not hiring her:  (a) the Director's justifications are "inconsistent, implausible and beyond reasonable credence because [she] was objectively qualified for the position," (b) the Corporation "deviated from its own policies and [failed] to provide [her] with a fairly administered selection process," and (c) she was treated differently than similarly situated employees.  Pl.'s Opp'n at 24; *see also id.* at 21.  None is persuasive.

**a.**

Smith first contends that she was "significantly better qualified than" Adikesavan.  *Id.* at 20.  "[W]hen an employer says it made a hiring or promotion decision based on the relative qualifications of the candidates, a plaintiff can directly challenge that qualifications-based explanation only if the plaintiff was *significantly* better qualified for the job than those ultimately chosen."  *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1227 (D.C. Cir. 2008) (Kavanaugh,

J.) (cleaned up); *see also Holcomb*, 433 F.3d at 897 ("In order to justify an inference of discrimination, the qualifications gap must be great enough to be inherently indicative of discrimination."). The qualifications gap "must be so apparent as to virtually jump off the page and slap us in the face." *Oliver-Simon v. Nicholson*, 384 F. Supp. 2d 298, 310 (D.D.C. 2005) (cleaned up).

Consider *Aka v. Washington Hospital Center*, 156 F.3d 1284 (D.C. Cir. 1998). There, the D.C. Circuit determined that a reasonable jury could find that the plaintiff was "markedly more qualified" for a pharmacy technician job than the selected candidate. *Id.* at 1294, 1299. It was undisputed that the plaintiff had 19 years of experience and a bachelor's and master's degree, while the chosen candidate had no college education, had worked in the hospital laundry for over a year, and had spent only two months as a pharmacy volunteer. *Id.* at 1295–97. The Circuit reasoned that these differences "[threw] into doubt the reason given for [appellant's] rejection." *Id.* at 1299.

Not so here. Smith notes her 15 years of "specialized, relevant experience" as an actuary in the Office of Benefits Administration ("OBA"). Pl.'s Opp'n at 20. She claims that Adikesavan had less relevant experience in the private sector and no "experience developing programs at the GS-14 level" or "produc[ing] work under the GS-14 position." *Id.*

Smith does not explain, though, how her actuarial experience makes her significantly more qualified for a management job. As the Director notes, "[n]owhere in the position description, the vacancy announcement, the [KSAs], or the vacancy questions is experience in OBA or as an actuary listed as a requirement, desirable, or even referenced at all." Def.'s Mot. at 18 (cleaned up); *see also* ROI at 2–7, 53–60, 61–65 (Part 2).

More relevantly, Smith served as acting PMSD manager.  *See* Def.'s SUMF ¶ 8.  But her tenure lasted less than three months.  And Adikesavan also served as "a supervisor in the IT field with 16 direct reports" before joining the Corporation.  Def.'s Mot. at 19 (citing ROI at 23–25 (Part 2)).  Any gap in managerial experience does not "virtually jump off the page and slap us in the face."  *Oliver-Simon*, 384 F. Supp. 2d at 310 (cleaned up).

Smith also denigrates Adikesavan's extensive work in the private sector.  *See* Pl.'s Disc. Resps. at 15 ("Work performed in the private sector is different from the public sector; it does not meet the requirement for the specialized experience.").  But "it is the perception of the decision maker which is relevant, not the self-assessment of [Smith]."  *Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2014).  The Corporation sought candidates with "one year of specialized experience *at or equivalent* to the GS-14 grade level in the Federal service establishing an organization-wide IT program from planning through implementation."  ROI at 63 (Part 2) (emphasis added); *see also id.* at 4 (Part 2) (same).   The Court will not second guess the Corporation's decision to consider private sector work equal to government work.  *See Jackson v. Gonzales*, 496 F.3d 703, 708 (D.C. Cir. 2007) ("We have said that courts must not second-guess an employer's initial choice of appropriate qualifications.").  The Corporation is no different from the countless government agencies and private companies that consider both experiences relevant, allowing D.C.'s "revolving door" to keep turning.

Even if Smith had better credentials, the panel still unanimously agreed that Adikesavan outperformed Smith in the interview.  It is reasonable for Shyamsunder to select Adikesavan based only on his interview performance, even assuming Smith were more qualified.  *See Fischbach v. D.C. Dep't of Corrs.*, 86 F.3d 1180, 1183–84 (D.C. Cir. 1996) ("Selecting a pool of qualified candidates based upon their written credentials and then making a final selection based

upon personal interviews is an obviously reasonable method of hiring a professional employee."). So Smith still does not undermine the Director's asserted reasons for her non-selection.

Smith also says that she was "objectively more qualified for the position" based on the opinion of Lisa Glufling—the former PMSD manager—who recommended Smith to serve as acting PMSD manager. Pl.'s Opp'n at 23; Def.'s SUMF ¶ 8. According to Smith,

> When Lisa Glufling informed Ms. Shyamsunder that she was going to leave the position at [the Corporation], Ms. Glufling said that Ms. Shyamsunder asked her whom from the [PMSD] did she think should act as Manager until someone was hired. Ms. Glufling said that she told Ms. Shyamsunder that I was the only one on the team ready for the responsibility. Ms. Shyamsunder asked Ms. Glufling about Mr. Adikesavan, Ms. Glufling said that her response was that, "Sathish did not have the experience," and she did not recommend him to serve in the Acting role.

Pl.'s Disc. Resps. at 12–13; *see also* Pl.'s Opp'n at 22–23.[5]

The Court will not consider Glufling's statements as evidence. "[I]t is well-settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." *Humane Soc'y of U.S. v. Animal & Planet Health Inspec. Serv.*, 386 F. Supp. 3d 34, 44 (D.D.C. 2019) (cleaned up). Hearsay—or an out-of-court statement that "a party offers in evidence to prove the truth of the matter asserted in the statement," Fed. R. Evid. 801(c)—is generally inadmissible, *see id.* 802.

Glufling's statements are inadmissible hearsay. Smith relies on them to prove their truth—that she was "objectively more qualified for the position than Mr. Adikesavan." Pl.'s Opp'n at 23. Smith could have submitted a declaration or testimony from Glufling. She did not. Her own recounting of Glufling's statements is not appropriate evidence at summary judgment.

---

[5] Smith provides these statements in response to Interrogatory No. 8, not No. 11 as she represents. *See* Pl.'s Opp'n at 22–23.

*Accord Hamilton v. Nat'l R.R. Passenger Corp.*, No. 1:19-cv-01986 (TNM), 2020 WL 6781234, at *8 (D.D.C. Nov. 18, 2020) (declining to consider out-of-court statement at summary judgment because it was inadmissible hearsay); *Humane Soc'y of U.S.*, 386 F. Supp. 3d at 44 (same).

Even if the Court considered Glufling's statements, they still do not establish pretext. Recall that Shyamsunder did not hire Smith in part because of her interview performance and error-filled application materials. Glufling's opinion does not undermine these legitimate reasons. It is reasonable for a recommended candidate not to receive a position based on poor interview performance. *Accord Gordon v. Off. of Architect of Capitol*, 928 F. Supp. 2d 196, 209 (D.D.C. 2013) ("[T]he defendant is entitled to rely on a candidate's superior interview performance as a rationale for selecting one candidate over another."). A recommendation is rarely (if ever) enough to get a job.

Recall that Glufling was not the deciding official. Def.'s SUMF ¶ 13. Nor was she on the panel that interviewed the candidates. *Id.* ¶ 12. Smith herself casts doubts on Glufling's qualifications. *See* Pl.'s Disc. Resps. at 10 (stating that Glufling had "no prior [Corporation] knowledge" and "no knowledge of the applications or processes of OIT or OBA" before she became PMSD manager). At most, Glufling's opinion suggests potential disagreement about who was the better candidate. The Court "must respect [the Corporation's] unfettered discretion to choose among qualified candidates." *Fischbach*, 86 F.3d at 1183.

A reasonable jury could not find that Smith was significantly more qualified based on Glufling's opinion or Smith's experience.

### b.

Next, Smith claims that she did not receive a "fairly administered selection process." Pl.'s Opp'n at 23. She contends that two panelists—Collins and Larsen—lacked experience with

the OBA, which "prevented them from fully recognizing and appreciating the vast difference in experience between [her] and the other candidates." *Id.* This argument rests on Smith's unproven assertion that OBA experience was necessary.

But the position description, vacancy announcement, KSAs, and vacancy questions did not mention the OBA. As Smith admits, "there's nothing that [she] can point to that required a subject matter expert to be on the interview panel for the PMSD position." Pl.'s Opp'n Ex. A, Nov. 13, 2020 Dep. of Sonia Smith ("Smith 11/13/2020 Dep. Tr.") 54:19–22, ECF No. 13-2. More, Smith acknowledged that Collins and Larsen *were* qualified to serve on her interview panel. *See id.* 37:5–6 ("Yeah, I felt that Ms. Collins was qualified to be on the panel."); *id.* 41:9–12 (agreeing that other than her surprise that "someone with an OBA background" was not on the panel, Smith did not believe that Larsen was unqualified to sit on the panel). No reasonable jury can draw a discriminatory inference from the participation of Larsen or Collins.

Smith also contends that "some of the panel's scores appear to have been changed." Pl.'s Opp'n at 23. She claims that Collins changed Smith's score from "9" to "8" and that Collins retroactively changed Adikesavan's score from "9" to "9.5" to give him the advantage. *Id.*; *see also* Pl.'s SDMF ¶ 17 ("Plaintiff contends that Mr. Adikesavan's score was retroactively changed to a '9.5' after the interview had taken place in order to give an advantage to the [Corporation's] desired selectee for the PMSD manager position.").

Smith offers nothing but her own view to support this theory. *See* Smith 11/13/2020 Dep. Tr. 91:4–5 ("Somebody wrote a 9.5. I don't know who. I don't know when. I wasn't there."). According to Smith, the "5" in Adikesavan's score "look[s] different" than the "5" listed on the date of Collins's evaluation. *Id.* 89:3–7. She also says that "the score 8 for [her] is dark and over written and appears to be changed from a 9 to an 8." Pl.'s Disc. Resps. at 22–23.

14

The Court will not accept Smith's speculation.  *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").  And Smith has not established the necessary familiarity with Collins's handwriting to offer an opinion about it.  *See id.* 901(b)(2) (permitting a "nonexpert's opinion that handwriting is genuine, based on a familiarity with it that was *not* acquired for the current litigation" (emphasis added)).  Smith could have submitted testimony from Collins.  She did not.  Smith could have offered an expert opinion or laid the proper foundation for her own opinion.  She did not.  So there is no admissible evidence to infer that Collins changed any score.  Nor can the Court draw a reasonable inference that any purported score change was done retroactively, not contemporaneously, or for a discriminatory reason, not to correct a scrivener's error.

But even if Collins did change her ratings, Smith's score is still lower.  Smith only would have received a 25.5 compared to Adikesavan's 27.5.  Recall that Smith and Adikesavan ultimately received a 24.5 and 28, respectively.  The outcome remains the same either way.  Adikesavan outperformed Smith in the interview.[6]

### c.

The Court need only briefly address Smith's comparator evidence because there is none.  Smith cites no similarly situated employee who received disparate treatment.  Nor does she "demonstrate that all of the relevant aspects of her employment situation were nearly identical to those of the [other] employee."  *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999) (cleaned up).  It is not for the Court to identify possible comparators in the record.  *See Jackson v.*

---

[6] There also appears to be scribbling in Larsen's score for Smith.  ROI at 51 (Part 2).  Smith does not offer any argument (or evidence) to suggest that Larsen changed his score for her.  A reasonable jury thus cannot draw a discriminatory inference from this score either.

*Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996) ("[T]he district court is under no obligation to sift through the record[.]").  If Smith relies on Adikesavan as the comparator, the Court finds that they are not "nearly identical" for the reasons already discussed.

Since Smith "fails to produce evidence that the comparators were actually similarly situated to [her], an inference of falsity or discrimination is not reasonable."  *Gulley v. District of Columbia*, 474 F. Supp. 3d 154, 167 (D.D.C. 2020).

\*     \*     \*

"Showing pretext . . . requires more than simply criticizing the employer's decisionmaking process."  *Hairston*, 773 F.3d at 272.  Smith "relies on [her] own statements, opinions, and assessment of [her] interview performance and the competence of the interviewers" to undermine the Director's asserted reasons for her non-selection as PMSD manager.  *Vaughan v. Amtrak*, 892 F. Supp. 2d 84, 94 (D.D.C. 2012), *aff'd*, 516 F. App'x 6 (D.C. Cir. 2013).  Her efforts fall short.

The undisputed record shows that the deciding official was, like Smith, a minority female over the age of 40 who had selected Smith to serve as acting PMSD manager.  *See* Def.'s SUMF ¶¶ 5, 8; Smith 11/13/2020 Dep. Tr. 42:6–8.  The successful candidate unanimously received a higher interview score than Smith, and each panelist offered concrete reasons why.  The selected candidate also was over the age of 40, *see* Def.'s SUMF ¶ 11, which further undercuts Smith's age discrimination claim.  *See Gray v. Foxx*, 637 F. App'x 603, 607 (D.C. Cir. 2015) ("[T]he fact

that [appellant] applied for two positions and one of those positions was filled by [a candidate], who was older than [appellant], undercuts [appellant's] claim of age discrimination.").[7]

Smith has failed to provide evidence from which a reasonable jury could find that the Director's reasons for not selecting her were pretext or because of discrimination.

**B.**

Smith next challenges the Corporation's decision not to hire her for the first CMSD manager vacancy.

**1.**

The Director submits that Smith "was not selected for the CMSD manager position as a result of her interview performance."[8]  Def.'s Mot. at 22.  Smith was one of three candidates interviewed.  *See* Def.'s SUMF ¶ 35.  The interview panel of Shyamsunder, Collins, and Rucki asked all candidates the same questions and rated each in specialized experience, KSAs, and competencies using a 5-point scale.  *Id.* ¶ 38.  "Candidates need[ed] to score a minimum of 3 points in each subject area to be considered for selection."  *Id.*

Smith did not receive the minimum score.  Each panelist only gave Smith a "3" in one category.  *Id.* ¶¶ 39, 41, 43.  Rucki explained that Smith "could have been better prepared for the

---

[7]  Smith does not meaningfully address her age discrimination or retaliation claims in her opposition.  The Court addresses them as necessary, but the Director is entitled to summary judgment on both for the same reasons discussed throughout:  Smith cannot rebut the Director's legitimate reasons for her non-selections.

[8]  The Director had argued that Smith could not establish a prima facie case because the Corporation never filled this vacancy so there was no adverse action.  *See* Def.'s Mot. at 21–22.  The Director appears to have withdrawn this argument, offering no response to Smith's contention that there was an adverse action because the vacancy was re-posted and filled.  Pl.'s Opp'n at 25–27; Def.'s Reply in Supp. Mot. Summ. J. at 10, ECF No. 14 ("Even If Plaintiff Can Establish a *Prima Facie* Case for the Initial CMSD Manager Non-selection Claim, She Cannot Overcome Defendant's Legitimate, Non-Discriminatory, Non-Retaliatory Reasons for Not Selecting Her.").  So the Court need not resolve this question.

interview." ROI at 121 (Part 1). He noted that Smith "was unable to answer several of the questions that were intended to evaluate a candidate's abilities to fill the position" and that she did not fully answer questions about CMSD business customers and stakeholders or details of CMSD's projects and programs. *Id.* Collins also stated that Smith "did not provide insight into her specialized experience in establishing an organization-wide IT program from planning through implementation." *Id.* at 69 (Part 1).

Shyamsunder, the deciding official, provided a similar assessment. She stated that Smith could not identify all of the CMSD-managed programs despite reading from handwritten notes. *Id.* at 89 (Part 1). Smith also could not describe the Corporation's 5-Tier governance structure, which she learned in training. *Id.*

As with her PMSD manager application, Smith's materials here also contained many mistakes. *See id.* at 88 (Part 1) (stating that Smith "was not selected based on her resume and performance in the interview"). Her resume incorrectly represented that she still served as acting PMSD manager. Def.'s SUMF ¶ 48; ROI at 8 (Part 3), ECF No. 11-4. It again misspelled "PBGC"—Smith's employer—as "PB*C*G," ROI at 88 (Part 2). *See also* Def.'s Mot. at 23–24 (listing ways Smith's "application materials not only failed to correct the errors from her prior applications" but also "contained additional new errors").

Smith therefore did not get the position. Def.'s SUMF ¶ 49. Indeed, nobody did. The only candidate to meet the minimum score requirement—Badar Awan—was not hired because he did not show that he would be "successful in a managerial capacity." *Id.* ¶ 50.

The Director's explanation satisfies the second prong of the *McDonnell Douglas* framework. *See Fischbach*, 86 F.3d at 1183–84.

**2.**

Smith now must undermine the Director's asserted reason for her non-selection.  She cannot.

**a.**

Smith first questions the Director's reliance on her interview to reject her.  According to Smith, "evaluations of a plaintiff's interview performance are an inherently subjective determination, and thus easily susceptible to manipulation in order to mask the interview's true reasons for making the promotion decision."  Pl.'s Opp'n at 27 (cleaned up).  Smith argues that the Director "fails to articulate any specific factual basis other than a subjective opinion that Ms. Smith performed poorly at her interview."  *Id.*; *see also id.* at 28 ("Defendant fails at attempting to articula[te] a clear and reasonably specific basis for Ms. Smith's non-selection, relying on purely subjective assessments of her interviews[.]").

The Court disagrees.  "[N]othing in the ADEA and Title VII prevents an employer from considering intangible qualities in making an employment decision."  *Vaughan*, 892 F. Supp. 2d at 94.  As the Circuit has made clear, "[s]electing a pool of qualified candidates based upon their written credentials and then making a final selection based upon personal interviews is an obviously reasonable method of hiring a professional employee."  *Fischbach*, 86 F.3d at 1183–84.

Each panelist offered concrete reasons why Smith's interview performance was unsatisfactory.  Indeed, *none* of them gave Smith a "3" in all evaluation categories, which was required for her selection.  Def.'s SUMF ¶¶ 38–39, 41, 43.  Smith's "focus on [her] outstanding qualifications misses the mark."  *Kranz v. Gray*, 842 F.2d 13, 22 (D.D.C. 2012) (cleaned up).

The Director did not reject Smith based on her credentials but because she did not perform well enough in the interview.

Smith offers no evidence from which a reasonable jury could find that reliance on her interview performance was pretext or motivated by discrimination or retaliation.

**b.**

Smith also asserts that Shyamsunder has a discriminatory hiring pattern.  Pl.'s Opp'n at 28.  She claims that in ten years under Shyamsunder, "eleven individuals were selected as Managers and none of them were African-American."  *Id.* at 27.  Smith (again) cites no evidence to support this claim.  Her "bare allegations of discrimination are insufficient to defeat a properly supported motion for summary judgment."  *Burke v. Gould*, 286 F.3d 513, 520 (D.C. Cir. 2002).

In any event, the evidence shows otherwise.  Recall that Shyamsunder tapped Smith as acting PMSD manager.  Def.'s SUMF ¶ 8.  Shyamsunder hired at least five African Americans as part of her management staff.  *See* ROI at 89 (Part 1).  She hired Marilyn Collins, the black female who served on the panel that interviewed Smith for the PMSD and first CMSD manager vacancies.  *Id.*; Def.'s SUMF ¶¶ 12, 36.  And her direct reports selected or promoted seven African Americans just in the last year alone that Shyamsunder approved.  ROI at 90 (Part 1). No reasonable jury could find a pattern of discrimination or retaliation on this record.

**3.**

Smith summarily argues that "but for [the Corporation's] discrimination and retaliation, [she] would likely have been selected for the CMSD Manager position."  Pl.'s Opp'n at 28.  As Smith admits though, it is "speculation" that she would have been hired had she not filed her EEO complaint.  Smith 11/13/2020 Dep. Tr. 141:3–6.  Her own belief that she "likely" would have received the position is not proof that "the unlawful retaliation would not have occurred in

the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

### C.

The Court next turns to the acting CMSD manager position for which the Corporation selected Nicole Queen—a 47-year-old black female. *See* Def.'s SUMF ¶¶ 51, 55.

### 1.

After the Corporation did not fill the first CMSD manager vacancy, Queen reached out to Shyamsunder to show interest in serving as acting CMSD manager. *Id.* ¶ 51. No other employee approached Shyamsunder about the acting position. *See* Shyamsunder Dep. Tr. 78:4–5; ROI at 92 (Part 1). Shyamsunder placed Queen as acting manager after reviewing her resume and finding her to be qualified. ROI at 92 (Part 1); Def.'s SUMF ¶ 55. Shyamsunder did not select Smith because Smith did not express interest and because she had already interviewed for the position and "did not demonstrate being qualified for this position by not scoring at least a minimum of 3 in each subject area."[9] ROI at 92 (Part 1).

Smith claims that her non-selection is pretextual because (a) she did not receive a fair selection process, (b) Shyamsunder has a history of discriminatory hiring practices, and (c) the proximity between Queen's hiring and Smith's protected activity suggests retaliation.[10] Pl.'s Opp'n at 29–32. These claims fail.

---

[9] The Director argues that Smith did not suffer an adverse action to establish a prima facie case because she "did not seek or take any steps to secure a detail as Acting CMSD Manager." Def.'s Mot. at 25–27. The Court need not consider this argument because Smith cannot undermine the Director's asserted reasons for not selecting Smith as acting CMSD manager.

[10] Smith also argues that she was treated differently than similarly situated employees "in that she was not informed about the open Acting CMSD manager position and not selected for the position despite her qualifications." Pl.'s Opp'n at 32. But *nobody*, including Queen, was notified about the position. *See id.* at 30 ("Ms. Smith has stated that there was never a notification sent to every OIT employee, including herself, regarding an opportunity to volunteer

**a.**

Smith contends that she did not receive a "fairly administered selection process" because the Corporation "deviated from its own policies in not selecting [her] for the Acting CMSD Manager position."  Pl.'s Opp'n at 31.  According to Smith, Shyamsunder typically "chose employees from within the division first and then from her department."  Pl.'s Disc. Resps. at 23.  Queen did not work in CMSD or BISD.  *Id.*; Pl.'s Opp'n at 31.  Smith argues that this deviation "constitutes evidence of discriminatory pretext."  Pl.'s Opp'n at 31.  Not so.

Proof of Smith's asserted "policy" is lacking.  She cites no written policy.  True, Shyamsunder placed Smith as acting PMSD manager when she worked in PMSD.  Def.'s SUMF ¶ 8.  But the Director also identifies several times Shyamsunder picked employees to serve as acting managers of divisions for which they did not work.  For example, three employees served as acting manager of the Shared Business Services Division ("SBSD") even though none worked there.  ROI at 93 (Part 1); Def.'s Mot. Ex. 8, Shyamsunder Decl. ¶ 5, ECF No. 11-5.  Like Queen, all three had expressed interest in serving as acting managers.  Shyamsunder Decl. ¶ 5.  And Shyamsunder did not solicit interest for the acting SBSD managerial position either.  Shyamsunder Dep. Tr. 90:11–16.  The record thus suggests that Shyamsunder had discretion to choose an acting manager.  She did not deviate from policy.

The alleged "policy" Smith relies on also does not help her.  Smith did not work in CMSD.  Def.'s SUMF ¶ 3.  If she is correct, Smith would not have been the top candidate to serve as acting CMSD manager anyway.  *See* Pl.'s Opp'n at 31 (arguing that the "[Corporation]

---

for temporary promotions to Acting Manager positions."); Shyamsunder Dep. Tr. 90:11–16 (confirming that there is never "circumstances under which [Shyamsunder] solicit[s] interest in an acting position rather than waiting for someone to approach [her]."). So Smith did not suffer disparate treatment.

deviated from its own policies in not selecting Ms. Smith for the Acting CMSD Manager position").

**b.**

Next, Smith recycles her claim that Shyamsunder had discriminatory hiring practices against African Americans. *See* Pl.'s Opp'n at 32. But recall that Shyamsunder selected Smith as acting PMSD manager. Def.'s SUMF ¶ 8. She also hired African Americans as part of her management staff and hired Marilyn Collins, who served on the panels that interviewed Smith for the PMSD and first CMSD manager vacancies. *See* ROI at 89–90 (Part 1); Def.'s SUMF ¶¶ 12, 36.

Indeed, Shyamsunder selected as acting CMSD manager an individual in the *same protected classes* as Smith. Queen, like Smith, is an African American female over the age of 40. Def.'s SUMF ¶ 51. Smith invites the Court to infer race and sex discrimination *because* Shyamsunder hired someone within her same classes. Pl.'s Opp'n at 15 ("Ms. Queen was chosen by Ms. [Shyamsunder] both as acting CMSD Manager and [permanent CMSD manager] *due to the fact* that she shares the *same racial background* as Ms. Smith and *is also female*." (emphasis added)). The Court rejects her legal jiu-jitsu. Shyamsunder's selection "within the same protected class[es] cuts strongly against any inference of discrimination." *Murray v. Gilmore*, 406 F.3d 708, 715 (D.C. Cir. 2005).

Shyamsunder did not re-interview *any* candidate from the first CMSD manager vacancy. Shyamsunder Dep. Tr. 80:12–83:8. So Awan—a male who is not African American and scored higher than Smith in his interview—also did not receive another interview. *See* Def.'s SUMF ¶¶ 11, 46. Shyamsunder treated Smith the same as all candidates, including those outside her protected class.

23

**c.**

Smith alleges that the OIT "leadership team," including Shyamsunder and Collins, "worked together to place Ms. Queen as Acting CMSD Manager because of [Smith's] protected activity." Pl.'s Opp'n at 30; *id.* at 31 ("The actions of the OIT leadership team demonstrate a collective motive to not select Ms. Smith as Acting CMSD Manager due to her protected EEO activity."). Smith offers nothing to support this theory. Conclusory and speculative allegations are not enough to survive summary judgment. *See Burke*, 286 F.3d at 520.

Smith also points to the proximity between Queen's placement and "her exercise in protected activity." Pl.'s Opp'n at 30. Smith filed her first EEO complaint in August 2016. *See* ROI 3–4 (Part 1). Shyamsunder did not place Queen as acting CMSD manager until three months later. Def.'s SUMF ¶ 55. So "an inference of retaliatory motive based upon the 'mere proximity' in time . . . would be untenable on the record here." *Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009) (rejecting retaliation claim when two and one-half months had elapsed). In any event, as Smith admits, "the proximity between a non-selection and protected activity may not alone support an inference of retaliation." Pl.'s Opp'n at 30; *see also Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007) ("[P]ositive evidence beyond mere proximity is required to defeat the presumption that the proffered explanations are genuine."). Smith produces no other evidence to support an inference of retaliation here.

**D.**

Finally, Smith challenges Queen's hiring as permanent CMSD manager. *See* ROI at 99 (Part 1).

**1.**

The Director asserts that Smith did not receive an interview for this position because Shyamsunder chose not to re-interview candidates that had applied to the first vacancy. Shyamsunder Dep. Tr. 80:18–82:18; ROI at 99 (Part 1).  "This was done in accordance with HR policies that if the job requirement has not changed, [and] the candidates' experience has not changed, [Shyamsunder is] not required to re-interview the candidate."  ROI at 99 (Part 1). Smith had applied and interviewed unsuccessfully.  *Id.*  So she did not receive another interview.

Shyamsunder asked the new candidates the same questions and evaluated them using the same three subject areas (specialized experience, KSAs, and competencies) and rating scale as the first CMSD manager vacancy.  Def.'s SUMF ¶ 62; ROI at 98 (Part 1).  Shyamsunder ultimately selected Queen, who received the highest interview score.  Def.'s SUMF ¶ 63; ROI at 98–99 (Part 1).  Queen "was able to articulate her experience with establishing organization-wide IT programs," "correctly identified and explained all four of the CMSD-managed programs," and "correctly described the Agency's 5-Tier Governance structure."  Def.'s Mot. at 29 (citing ROI at 110–13 (Part 1)).

Smith challenges the Director's reason not to hire her.  She claims (a) that Shyamsunder departed from the normal selection process, and (b) that Smith would have been selected "but for" her protected activity.  Pl.'s Opp'n at 32–38.

**a.**

Smith faults the Corporation's "unjustified departure from its normal selection process of failing to organize a proper interview panel."  *Id.* at 36.  She contends that the decision not to convene a panel was contrary to the Corporation's "own established regulations," was "based on shaky reasoning," and "was done without proper justification."  *Id.* at 37.

Smith's claims fall flat.  She does not, for example, provide the "established regulations" that she references.  Shyamsunder did convene an interview panel for the PMSD and first CMSD manager vacancies.  But "it's not a requirement that [Shyamsunder] have to have panel members."  Shyamsunder Dep. Tr. 88:3–4.  And Shyamsunder otherwise followed the same interview process as the first CMSD manager vacancy.  She asked the candidates the same questions.  She used the same categories and rating scale to evaluate the candidates.  And she was the deciding official both times.  *See* Def.'s SUMF ¶¶ 37, 62.

Even if Shyamsunder should have convened a panel, this evidence does not show pretext against Smith.  Shyamsunder decided not to re-interview Smith or *any* candidate.  *See* Shyamsunder Dep. Tr. 81:12–14 ("[T]here were a couple of people who had been interviewed before that I did not have to interview[.]"); *id.* 82:22 ("No one was reinterviewed.").  So the lack of an interview panel is immaterial.  It does not undermine the decision not to re-interview Smith.  *Accord Oliver-Simon*, 384 F. Supp. 2d at 309 (holding that the "manner of successful candidate's] selection [was] irrelevant" when the plaintiff "was no longer being considered for the position" because she did not make the best qualified list and was not forwarded to the selecting official for consideration).

"Even if [Smith] was victimized by poor selection procedures, [the Court] may not second-guess [the Corporation's] personnel decision absent demonstrably discriminatory motive."  *Hairston*, 773 F.3d at 272 (cleaned up).  Smith had interviewed before a panel for the first CMSD manager vacancy and failed to score the bare minimum in each evaluation category.  Def.'s SUMF ¶¶ 38–39, 41, 43.  No discriminatory motive exists for not giving her another chance.

**b.**

Smith asserts that "[b]ut for [the Corporation's] retaliation, [she] would likely have been selected for the reposted CMSD manager position." Pl.'s Opp'n at 37.  She notes that she "was listed on the certificate of eligibility, as a Best Qualified candidate," but that "unlike other candidates for the reposted CMSD Manager Vacancy, [she] had conducted a protected activity in the form of her [EEO] complaint." *Id.* at 35.  Not so.

True, Smith was a "Best Qualified candidate."  Def.'s SUMF ¶ 59.  But so too was Awan, who had also applied for the first CMSD manager vacancy and received a higher interview score than Smith.  *Id.*  Awan, like Smith, also did not receive another interview.  A reasonable jury thus can draw no inference of pretext or retaliation based on Smith's non-selection given her "Best Qualified" designation.

**IV.**

"Racial discrimination is a persistent and invidious threat to our society's welfare, but like pulling a fire alarm for kicks in a nursing home, false allegations of discrimination impose high costs on us, too." *Hinds v. Mulvaney*, 296 F. Supp. 3d 220, 245 (D.D.C. 2018), *aff'd*, 2019 WL 5432064 (D.C. Cir. Mar. 28, 2019).  Smith disagrees with her employer's decision to promote others to positions that she felt she deserved.  That feeling is all too familiar in the American workplace.  But disappointment is not evidence of discrimination or retaliation.  The undisputed record here shows that the Director had legitimate, nondiscriminatory, and nonretaliatory reasons to not select Smith for these managerial positions.  Smith has not shown that these reasons were pretextual or for a discriminatory or retaliatory reason.

The Director is entitled summary judgment.  A separate Order will issue.


Dated: May 25, 2021                                    TREVOR N. McFADDEN, U.S.D.J.